May it please the Court, Walter K. Pyle on behalf of Mr. Bush. At Mr. Bush's trial, the prosecutor challenged an African-American juror. This happened to be the only African-American juror on the entire panel, and the defendant objected. The Court cut the procedure fairly short and said, well, this juror has relatives who had been involved in criminal proceedings, and your Wheeler objection is overruled, is denied. However, in that same category, jurors with relatives who had been involved in criminal proceedings, there were other jurors who were allowed to remain on the jury. Was the exposure to criminal trials equal among all the jurors? No, and it never will be. It will never be qualitatively the same. If the prosecutor narrows his challenge under Batson because of a very wide exposure or a difficult exposure or whatever that a prospective juror may have, as opposed to the others, what's wrong with that? There's nothing wrong with it. In a single case. There's nothing wrong with it if the prosecutor gives that reason, but if a judge at the trial gives the reason or if an appellate advocate gives the reason, it's coming from the wrong mouth. It should come from the mouth of the prosecutor, saying, I believed. So many courts now just, you know, they give the jurors a questionnaire to fill out, and it's available to counsel ahead of time and to the court ahead of time, and I imagine counsel knows exactly what the court knows and vice versa. Is that correct in this case? It is. I don't recall that there were juror questionnaires in this case. Okay. I don't believe there were. But once that category has been established, that other African-American the African-American juror and other people that were allowed to remain on the jury had Well, it wasn't. I mean, if you exclude everybody who had somebody who had been involved with the law, you exclude a lot of people. It looked to me like what the prosecutor was doing is asking people who had loved ones who had been involved with law enforcement and asked them whether they thought they were treated fairly. And those who said, yeah, I think they were treated fairly were allowed to stay on, and those who said, no, I think they got a fair deal were excluded, including a juror number 8630. 8360. I've got 8630. Maybe it's a different juror. Okay. Well. I think 8630 was the juror in question. The one that was struck. It's 8630. All right. But there's another juror. Whatever it was. But each of them said, I can be fair in this case. The judge asked them, is there any, well, the judge asked two questions, which are almost the same. They asked, is there anything that would impact your service on this, in this jury? And asked the other jurors, is there any reason why you can't be fair in this case? And everybody answered, I can, that this doesn't affect me to the point where it would affect my deliberations in this case. And what I'm emphasizing is that all of these considerations. But that's certainly what they will say. Once they say, no, I can't be fair, then they're pretty much gone. But there were some who said, I thought that the, that they were treated fairly by the police. Or, you know, I have no complaint. And those stayed on. And as best I could tell, all the ones that said, well, I wasn't really happy with the way my relative or loved one was treated, were all excluded. White and black. And is, am I wrong about that pattern? Well, the juror, the African-American juror, the only time she talked about whether she thought there was a problem was, she said she thought her husband should have been given more leniency. She, I don't think she said. Okay. Well, that was a complaint. I mean, she was unhappy, you know, and juror 429 said they were not very nice. Law enforcement was not very nice. Sort of a mild complaint. Sort of not in any different order than he wasn't given enough leniency. If anything, it is less of a complaint. Not, you know, not very nice. Then there was juror 5598, whose brother charges robbery. And he complained about the fact that he got 20 years. Sounds to me like a leniency complaint. Like, you know, they should be more lenient with him. And that one was struck, too. So it seemed, I mean, I don't know, just looking at it, it looks to me like everybody who, who said that they had some difficulty or some problem with the way the prosecution or the police treated their relative got struck. Am I wrong about that? Well, you're, I think you may, to me, you may be overemphasizing it, but in general, there is an argument to be made that the juror's response was. That's a lot of words I'm wanting to hear. Yes. Yes. Yes. Yes. On the other hand. So if that's the case, where's your prima facie case? Well, the prima facie, I'm suggesting that at that point, once we've established a category, relatives with criminal histories, that once that category has been established and we show that other non-African Americans are allowed to remain on the jury, that the. Well, but you're saying a category is if you have one relative who's been convicted and the other person has ten relatives, they're in the same category. I am. I'm saying they're always going to be, well, they won't always be qualitatively different, but they will always be quantitatively different. And I'm saying that that is an inquiry that should be gone into in step three of the process rather than step one, where we're asking whether there's a prima facie case. In this case, the African American juror, for example, had sat on two other criminal jurors, at least two prosecutors obviously didn't think that he was the kind of a juror that was biased in favor of the defense. And when you take a start, you just start balancing these things. It's really a balancing test that is more appropriate in the step three of the analysis rather than step one. And if that, if those reasons had come from the prosecutor and the judge had said, by golly, you're absolutely right, Mr. Bush would have no case. Well, but you have, you know, the defense has to make a prima facie case. And it's very hard to make a prima facie case with one strike, even though it would be 100 percent of the minority population. It's still only one. And then you have to find some way of categorizing, you know, is this a class of one that was struck because of color, or are they related to some other pattern? And it seems to me if the judge finds some other pattern, or could have reasonably found some other pattern, then you haven't gone past step one. Well, I'm suggesting the pattern, there's two ways to look at a Batson issue. One is if there's a pattern or you use percentages or statistics. And the other is to simply compare, use a comparative juror analysis. And in Bush's case, there's only one juror of African-American descent, so it's going to be difficult to do statistics with one. But when we look at a comparative juror analysis, there are jurors that were left on who had relatives involved in criminal proceedings. And I'm suggesting that once that happens, that the prima facie case has been established. And yes, we can come up with reasons, well, this one was robbery, and maybe she was closer to her brother than this person was to her spouse. But those are all real reasons that should be given by the prosecutor. Let me ask you, if you agree that had all of this analysis been done, and you called it step three instead of step one, that you would not prevail, you're basing your case solely on the fact that it was the judge who said this instead of the prosecutor? Yes. And that once the prosecutor gives those reasons, then the judge, assuming he would agree with the prosecutor, which we don't know at this point. Well, except that he agreed even without the prosecutor, so we know that he would have agreed. Well, yes. I suppose the judge thought that's an absolutely wonderful reason that I came up with. But I'm saying that that's coming from the wrong source, that it should come from the prosecutor. Basically, your case is that the judge did not let the prosecutor respond, but assumed the prosecutor's role. Yes. And in 1998, California law prohibited the judge from making a comparative juror analysis. And that's probably why he did what he did. I see my time is up. Thank you, counsel. We'll give you a minute for rebuttal. Good morning. David Glassman, Deputy Attorney General for the Respondent. Going back to the circumstances as they were presented to the trial court, I think the context is a little bit different. First of all, it is apparently true from the record that only one juror in the veneer of 18 jurors is African American. It is also true, as Judge Kaczynski, I think, has indicated, that under clearly established Ninth Circuit case law, there is no statistical, excuse me, disparity that would emerge per se from the removal of one person. And so that, as a matter of law, would not create, either in California or in this Court, a presumption of bias. But the more important point is, and I know there's been discussion of these categories that I think are kind of ad hoc descriptions of this case. The more important point in this case is that this juror was in a position fundamentally unlike any other juror, apparently in the veneer, and that is the juror had no less than four relatives who had been involved within the last five-year period in serious criminal conduct. She had a spouse who was on probation following conviction in a federal court for bank fraud or tax fraud. Her brother had been convicted within the same five-year period of murder, a murder in which her sister-in-law was complicit and her nephew was also involved. No other juror in this veneer had a scenario remotely like that. There were no other jurors with spouses currently on probation, and there were no other jurors with a total of four relatives recently embroiled in such serious proceedings. And I think that is why, you know, the suggestion was also made that the judge somehow truncated or interrupted this motion from being made by usurping the role of the prosecutor. The only thing that the judge did was comment on the obvious regarding the fact that the sole basis for the motion was the fact that the juror happened to be African American, but that the juror had circumstances that were unlike others on the veneer. And there was really no response to that by defense counsel at trial. And I think all of these suggestions were simply not presented to the trial court. When would defense counsel have had a chance to point all of that out? As best I could tell, there was an objection, and the judge said, a world, and that was that. I mean, would it be different if the judge had then heard from the prosecution, and said, well, no, you know, there's no problem here because, you know, instead of all the things you just explained so very nicely. But none of that was put on the record, so there really wasn't anything for the defense lawyer to rebut. The judge just said no, and how do you rebut no? Well, Judge Kaczynski, I think that the judge was, I would refer to excerpts of pages 260 through 262, which is set forth in our brief at pages 15 through 18. There is, I think, a dialogue that occurs. And the only other thing, so in other words, I don't think the judge simply says denied. And the only other thing I would add is that the trial court had before it at that time the prior removals that you alluded to earlier, which were different in their circumstances. The removals of jurors 5598, also known as juror number 4, and the removal of juror 429, who at one point was juror 15, and at another point was juror 10. I mean, the judge lists these things, which are basically the, and you think the defense lawyer was supposed to come back and say what at that point? Well, I think that the defense lawyer was certainly able to articulate more than he said with respect to what his basis for the motion is. Really, as I read it, the motion is a complaint about the cross-section requirement, about the veneer, that it's unfair that the sole African-American potential juror has been removed. And that, I don't think, is aimed at the same reasons that we're discussing here. Now, Wheeler's been overruled, right? Well... So the whole analysis proceeding under Wheeler, which we now know is too stringent. Well, I think what has been modified, Your Honor, is that at the appellate stage, the State Court evaluated this under the strong likelihood standard for determining whether there was bias, and that that has been overruled. The courts have decided that a lesser standard is required. But the district court in this case recognized that change in the law, evaluated the case de novo, and for reasons similar to the reasons that I'm citing, found that there was no Wheeler or Batson violation. Well, Wheeler, it says, was a two-step process. Batson's a three-step process. So there's a difference in the procedure. But I don't – I'm not aware of any difference that would... Well, my question really comes because I understand what counsel's argument really boils down to is that he would not have any objection to this had it been defense counsel, the prosecutor, and then defense counsel. And his objection really is to the judge assuming the role of the prosecutor and giving the prosecutor's reasons, which may or may not have been the prosecutor's real reasons. Well, the only thing I can add to that, Your Honor, is that there is the judge does perform a threshold function of deciding whether or not a prima facie case has been made out. And the judge in this case, I submit, was doing nothing more than recognizing apparent circumstances that indicated that this was not, based on the argument, the minimal grounds articulated by the defense attorney, that this did not rise to a level requiring a response given that there were these glaring discrepancies. And those same discrepancies between this juror and others, I think, were the ones recognized by the state appellate court, by the district court, and were sufficiently obvious that the judge did not determine that the prosecutor had to elaborate. And that, I don't believe, has changed in the interim. Unless the Court has any further questions, I'll submit it. Thank you. I suggest that if we allow this analysis as to the motivation of the jurors to take place at step one, it's going to be very, very easy for the courts  to find that there is not a Batson violation, because we can always find some reason or some statement in the juror's, in the voir dire transcript. No, but you've got to have a stage one determination. You do. The judge has to determine whether or not there was a prima facie case established. And I can't see where that can happen other than by having the objection and then having the judge say, yes, I find a prima facie case, and therefore I will now turn to the prosecutor to rebut it. Yes. I can't. What other process could there be? That is the process. That's the process that took place here. The defense lawyer made his objection, and then the judge said, no, I don't think a prima facie case has been made out. Correct. But at that point, the judge should have said that a prima facie case has been made out, because if I use comparative juror analysis, I find jurors that were in the same category that I'm in. But what the judge said is I don't find that to be the category. It's not a category of anyone who's ever come into contact with the law. It's a category, as the judge found the category, it's a category of someone who has extensive serious problems with the law, and numbers of family members who've had it. And that's not the same category as somebody who's had one incident. Well, that wasn't what the judge specifically said was I find that she has relatives who have relatives who were involved in certain criminal proceedings. And that category applies to jurors that were left on the jury also. Was there a couple of other jurors that had one relative person? They were. They were qualitatively and quantitatively different. And that will almost always be the case. And I'm suggesting that's an analysis that should take place at Step 3 after the prosecutor has given her reasons. Thank you, counsel. Thank you. The case just argued will be submitted. The next case for argument is U.S. v. Wheeler. Thank you.
judges: Beezer, Reinhardt,kozinski